**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**BLAINE L. ELMORE,**

        **Plaintiff,**

**-vs-**                                                 **Case No. 3:10-cv-573-J-37JBT**

**NORTHEAST FLORIDA CREDIT**
**BUREAU, INC.,**

        **Defendant.**

_____/

## MEMORANDUM OPINION AND ORDER

This case is before the Court following an hour long bench trial held on August 31, 2011. Having reviewed the evidence and applied the relevant legal authority, the Court now renders its decision on the merits.

### I. BACKGROUND

This is an unlawful collection practices action arising under the Fair Debt Collection Practices Act, Title 15, United States Code, §§ 1692 *et seq.* ("FDCPA"), and the Florida Consumer Collection Practices Act ("FCCPA"), §§ 559.55 *et seq.*, Florida Statutes. Plaintiff Blaine L. Elmore ("Elmore") claims that Defendant Northeast Florida Credit Bureau, Inc. ("NFCB") sent him a deceptive collection letter that threatened unlawful actions. Elmore seeks statutory damages of $1,000.00 pursuant to the

FDCPA, $1,000.00 pursuant to the FCCPA, attorney's fees and costs, and injunctive relief pursuant to Fla. Stat. § 559.77(2).[1]

## II. FINDINGS OF FACT[2]

The following facts have been established by a preponderance of credible evidence:[3]

1. Elmore incurred a hospital bill for medical treatment received at Flagler Hospital.

2. After Elmore failed to pay the bill, Flagler Hospital consigned, placed, or otherwise transferred the debt to NFCB for collection purposes.

3. On or about February 24, 2010, Elmore received a letter from NFCB's representative, stating:

> Dear BLAINE L[.] ELMORE,
> Federal law grants us the right to conduct a personal asset search. It is our intention to begin what may be a costly and long asset search on you. To prevent that action you must[:] 1. Pay in full now[, or] 2. Pay [half] now and the remainder in [three] equal amounts [one] month apart. . . . If you do not pay, we may at our discretion file form 1099C with the IRS. This form reports the past due account as income to you.

---

[1] In the Amended Complaint (Doc. No. 5), Elmore also alleges that NFCB's actions violate the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and accordingly, he seeks remedies pursuant to Fla. Stat. § 501.211. However, the issue is not raised by Elmore in either the joint pretrial statement, the proposed findings of law, or during trial. Therefore, the Court treats this claim as abandoned and will not address it in this Order. *See Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1566, 1568 (11th Cir. 1994) ("[Trial court] could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment."). Additionally, Elmore's counsel has stipulated at trial and in the joint pretrial statement that actual damages are no longer sought, either.

[2] To the extent that any of the following facts may represent conclusions of law, the Court adopts them as such.

[3] The following undisputed facts derive from the parties' joint final pretrial statement (Doc. No. 44), filed on July 15, 2011. At trial, the parties reassured the Court that these facts remain undisputed.

(Pl.'s Ex. 1.)

### III. CONCLUSIONS OF LAW[4]

The FDCPA is a strict liability statute, the purpose of which is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. The Eleventh Circuit, in *Oppenheim v. I.C. System, Inc.*, 627 F.3d 833, 836-37 (11th Cir. 2010), held that "[t]o recover under both the FDCPA and the FCCPA (a Florida state analogue to the federal FDCPA), a plaintiff must make a threshold showing that the money being collected qualifies as a 'debt.' " In the FDCPA and the FCCPA,

> "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5); Fla. Stat. § 559.55(1). Accordingly, the *Oppenheim* court held that "the FDCPA and FCCPA apply only to payment obligations of a (1) *consumer* arising out of a (2) *transaction* in which the money, property, insurance, or services at issue are (3) *primarily for personal, family, or household purposes*. The statute thus makes clear that the mere obligation to pay does not constitute 'debt' under the FDCPA." *Oppenheim*, 627 F.3d at 837 (emphasis in original).

In order to prevail on an FDCPA claim, a plaintiff must plead and prove three elements. First, the plaintiff must have been the object of a collection activity arising from consumer debt.

---

[4] To the extent that any of the following conclusions of law may represent findings of fact, the Court adopts them as such.

*McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1273 (M.D. Fla. 2008). Second, the defendant must be a debt collector as defined by the FDCPA. *Id*. Third, the defendant must have engaged in an act or omission prohibited by the FDCPA. *Id.*; *see also Fuller v. Becker & Poliakoff, P.A.*, 192 F. Supp. 2d 1361, 1366 (M.D. Fla. 2002); *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360 (S.D. Fla. 2000).[5]

The issue in this case is straightforward. The parties agree that the first two elements of proving a violation of FDCPA and FCCPA are met: (1) Elmore is a debtor subject to a collection activity arising from a consumer debt, and (2) NFCB is a debt collector, as defined by the FDCPA and the FCCPA. Thus, the Court need only determine whether NFCB engaged in an act or omission prohibited by the FDCPA and/or FCCPA. More particularly, Elmore argues that NFCB's collection letter violates 15 U.S.C. § 1692e(5) and e(10), 15 U.S.C. § 1692f(1), 15 U.S.C. § 1692d, and Fla. Stat. § 559.72(9). The evidence before the Court consists of the collection letter at issue and the testimony of Mr. Wayne Gordon, NFCB's president of over thirty years.

### A.     FDCPA Sections 1692e(5) and 1692e(10)

Section 1692e prohibits a debt collector from using "any false, deceptive or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The Eleventh Circuit has held that § 1692e claims are to be evaluated using the "least sophisticated

---

[5] In this Order, the Court interprets the FCCPA provision in the same way as its FDCPA parallel. *See Oppenheim*, 627 F.3d at 839 (quoting Fla. Stat. § 559.77(5), "FCCPA specifies that, in construing its provisions, 'due consideration and great weight shall be given to the interpretations of . . . the federal courts relating to the federal [FDCPA].' "); *Groves v. U.S. Bank*, Case No. 8:10-cv-2665-T-17TGW, 2011 WL 2192821, *3 (M.D. Fla. June 6, 2011) ("When applying the FCCPA, the Court must give due consideration and weight to the interpretation of the corresponding federal debt collection statute, the Federal Debt Collection Practices Act.") (internal citation omitted).

consumer" standard. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985). In adopting this standard, the *Jeter* court reasoned that the FDCPA best protects consumers by adopting a definition of "deceive that looks to the tendency of language to mislead the least sophisticated recipients of a debt collector's letters and telephone calls." *Id.* (quoting *Wright v. Credit Bureau of Georgia, Inc.*, 548 F. Supp. 591, 599 (N.D. Ga. 1982)) (internal quotation marks omitted). The least sophisticated consumer standard is an objective test, so whether or not a specific plaintiff was misled by a debt collector's representation is irrelevant to liability under the FDCPA. "The least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (internal quotation marks and citation omitted). The standard is designed to protect vulnerable consumers while simultaneously preventing "liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." *Id.*

### 1. FDCPA Section 1692e(5)

Section 1692e(5) prohibits debt collectors from threatening "to take any action that cannot legally be taken or that is not intended to be taken." Claims brought under § 1692e(5) are analyzed using a two-part framework. First, courts apply the least sophisticated consumer standard to the language at issue in order to determine if it could be perceived as a threat. *LeBlanc*, 601 F.3d at 1193. If the language is threatening, courts next consider whether the threatened action could be taken legally. *Id.*

In the instant case, Elmore argues that NFCB, by including the language in the collection letter stating, "It is [NFCB's] intention to begin what may be a costly and long asset search on you," and that

"[t]o prevent that action" Elmore needed to make a payment, violated § 1692e(5) because that wording is threatening to a least sophisticated consumer to the extent that it is suggesting that the debtor would bear the costs of the "costly and long" personal asset search. The language threatens, Elmore argues, to take action that could not legally be taken. *See* 15 U.S.C. § 1692f(1) (prohibiting collection of any costs, interests, or other expenses incurred incidental to the collection of debt).

In its defense, NCFB disagrees that the language is threatening in any way or that it suggests that the debtor would bear any costs.[6] (*See* Trial Tr., 25:20-24.) When the Court inquired of the purpose for including such language in the collection letter, Mr. Gordon testified that the language was "designed . . . for impact, just like many other letters that have been created. It's to get a response, for some dialogue." (*Id.* at 28:10-14.)

Considering Mr. Gordon's testimony in conjunction with the specific wording in the collection letter, the Court finds that a least sophisticated consumer would feel threatened that, unless a payment is made, he or she will bear the costs NFCB incurs as a result of the "costly and long" asset search. As that action cannot legally be taken, the Court finds that NFCB violated FDCPA § 1692e(5).

Additionally, Elmore argues that the sentence, "If you do not pay, we may at our discretion file form 1099C with the IRS," also violates § 1692e(5) as it threatens to take action that is not intended to be taken. To prove that NFCB never intended to file 1099C form in this case, Elmore invited

---

[6] Though Mr. Gordon agrees with Elmore that NFCB could not have legally charged any asset search costs to the debtors, he hotly contests the threatening nature of the language at question. (*See* Trial Tr. at 12:14-18.) Moreover, NFCB heavily relies on the fact that this is a form letter created by the Comptronic DebtMaster software company, whose alleged responsibility it is to verify that all forms are legally compliant. Because this form was not written by NFCB, Mr. Gordon suggests, NFCB should not be held liable for any legal deficiencies of the letter. (*Id.* at 26:12-16.) Noting the lack of any legal authority on this issue, this argument is without merit.

testimony from Mr. Gordon that he does not remember whether any 1099C forms have been filed with the IRS at all in 2009, 2010, or 2011 to date, and that he is unsure whether it was filed in this case. (*Id.* at 14:10-23 and 16:8-14.) Construing Mr. Gordon's testimony as not credible, because NFCB had not filed any 1099C forms with the IRS in the last two and a half years, Elmore submits, NFCB never intended to do so in the instant case.

Even if the Court were to find that Mr. Gordon's testimony in this regard is not credible and that NFCB indeed had not filed any 1099C forms in the past few years, this by itself is insufficient to conclude, by a preponderance of the evidence, that NFCB never intended to do so here. Moreover, the language does not suggest that NFCB <u>will</u> file the form, but instead, it merely notifies the debtor that such action, at NFCB's discretion, <u>may</u> be taken. Thus, the Court finds no violation of § 1692e(5) in this instance.

### 2.     FDCPA Section 1692e(10)

Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). Elmore argues that the purpose of stating "[i]t is our intention to begin what may be a costly and long asset search on you" is to deceive a debtor into believing that he or she will bear the costs of the search.

As stated previously, Mr. Gordon testified that the language was meant to provoke a reaction from the debtors. (Trial Tr., 28:10-14.) The next sentence beginning with "To prevent this action you must . . . [p]ay," even more so suggests that the language is of a misleading nature. Furthermore, Mr. Gordon testified that the cost of the most sophisticated asset search would be no more than $50.00.

(*Id.* at 12:4-5.) It stands to reason that if the debtors were not to think they will bear those costs, and that those costs would be substantial, they would not have an incentive to prevent such action from being taken. Thus, the Court finds that the collection letter is deceiving and thus in violation of § 1692e(10).

### B. FDCPA Section 1692f(1)

Section 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Elmore submits that NFCB's collection letter violates this section because NFCB appears to have attempted to collect asset search costs, which would be incidental to the principal debt obligation. The Court, however, must deny Elmore's invitation to reach this conclusion. Had NFCB actually gone a step further and added the costs of a personal asset search to the total amount owed, the Court would have probably agreed with Elmore. However, the present factual circumstances do not warrant the Court's finding of a violation of § 1692f(1).

### C. FDCPA Section 1692d

Section 1692d prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Without presenting any specific argument as to this section, Elmore contends that the collection letter as a whole violates this section.

After its consideration of all of the facts in this case and after its independent legal research, the Court holds that the facts in the present case do not warrant a finding of a § 1692d violation. At

issue in this case is a single letter, and that single letter does not rise to a degree of harassing, oppressing, or abusing nature envisioned by Congress. As examples of violations of this section, Congress included:

> (1) The use or threat of use of violence or other criminal means to harm [. . .;]
>
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader[;]
>
> (3) The publication of a list of consumers who allegedly refuse to pay debts [. . . ;]
>
> (4) The advertisement for sale of any debt to coerce payment of the debt[;]
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number[; and,]
>
> (6) [P]lacement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d(1)-(6). The Court concludes that the deception found in the collection letter is wholly different from the examples of conduct that would be condemned, and thus, it finds no violation under this section. *See Jeter*, 760 F.2d at 1179 (stating that the court "believe[s] that Congress did not contemplate the prohibition of deceptive conduct *per se* within the confines of § 1692d.") (emphasis in original).

**D.     FCCPA, Fla. Stat. Section 559.72(9)**

Fla. Stat. § 559.72(9), a close parallel to 15 U.S.C. § 1692e(5), states as follows: "In collecting consumer debts, no person shall . . . [c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such

person knows that the right does not exist." *See Bentley v. Bank of America, N.A.*, 773 F. Supp. 2d 1367, 1372-73 (S.D. Fla. 2011) ("To establish a violation under section 559.72(9) of the FCCPA, it must be shown that a legal right that did not exist was asserted and that the person had actual knowledge that the right did not exist.") (internal quotation marks and citation omitted). Elmore argues that NFCB violated Fla. Stat. § 559.72(9) by asserting a legal right (Pl.'s Ex. 1; stating, "Federal law grants us the right to conduct a personal asset search. It is our intention to begin what may be a costly and long asset search on you.") when NFCB knew it had no right to charge those costs to the debtors. At trial, Mr. Gordon testified that he knew that NFCB could not charge the collection costs to the debtors. (Trial Tr., 29:7-8) ("It's illegal. Can't do it."). Mr. Gordon further testified that this letter is a standard form provided by Comtronic DebtMaster software company, but that he personally reviewed the same form letter to assure himself that it is not in violation of the law. (*Id.* at 27:11-24.) Thus, having testified that he knew it would be illegal to assess personal asset search costs to debtors, Mr. Gordon, and thereby NFCB, had actual knowledge. Resembling its analysis as to the 15 U.S.C. § 1692e(5), the Court similarly finds that NFCB, having known that it could not legally apportion to debtors any costs incurred incidental to the collection efforts, violated Fla. Stat. § 559.72(9) by including language loudly suggesting that it could do so.

## IV. DAMAGES

### A. Statutory Damages

Courts may award statutory damages up to $1,000 in an action brought by an individual. 15 U.S.C. § 1692k(a)(2)(A). The Eleventh Circuit interprets § 1692k(a)(2)(A) to mean that statutory damages are limited to a maximum of $1000 "per action," regardless of how many distinct FDCPA

violations or separate debts are involved in a case. *See Harper v. Better Bus. Servs., Inc.*, 961 F.2d 1562 (11th Cir. 1992). In determining the amount of liability awarded under § 1692k(a), a court shall consider all relevant factors, including "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b). The actual sum awarded is left to the discretion of the trial court. *See Harper v. Better Bus. Servs., Inc.*, 768 F. Supp. 817, 819-20 (N.D. Ga. 1991). Additionally, courts may award the costs of an action, along with a reasonable attorney's fee in the case of a "successful action to enforce liability." 15 U.S.C. § 1692k(a)(3).

Elmore requests the maximum amount of statutory damages under both the FDCPA and FCCPA. The Court does not find that the present circumstances warrant the maximum statutory award. Considering the relevant facts, the Court awards Elmore $100.00 for the FDCPA violations, and $100.00 for the FCCPA violation, for a total award of $200.00.

### B.     Injunctive Relief

The FCCPA states that a "court may, in its discretion, . . . provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." Fla. Stat. § 559.77(2). As the Court finds that NFCB violated FCCPA as a matter of law, it is hereby enjoined from including the following language, and any wording suggesting the same, in its collection letters: "It is our intention to begin what may be a costly and long asset search <u>on you</u>," followed by "to prevent that action, you must pay."

### V. CONCLUSION

Based on the foregoing, it is ordered as follows:

1. The Clerk is directed to enter a final judgment providing that Plaintiff Blaine L. Elmore shall take $100.00 in statutory damages under FDCPA and $100.00 in statutory damages under FCCPA.

2. Defendant Northeast Florida Credit Bureau, Inc. is enjoined from using "It is our intention to begin what may be a costly and long asset search <u>on you</u>," followed by "to prevent that action, you must pay" language, or any other wording suggesting the same meaning, in its collection efforts.

3. The Court retains jurisdiction over any timely motion for attorney's fees and costs.

**DONE** and **ORDERED** in Chambers, in Jacksonville, Florida on September 27th , 2011.

*[Signature]*
ROY B. DALTON JR.
United States District Judge

Copies furnished to:

Counsel of Record

Unrepresented Party